## WILLIAMS v. NORTHERN LUMBER CO.

### (Circuit Court, D. Minnesota. October 8, 1901.)

1. MASTER AND SERVANT — RAILROADS — MINNESOTA STATUTE RELATING TO FELLOW SERVANTS.

Rev. St. Minn. 1894, § 2701, providing that any railroad company owning or operating a railroad in the state shall be liable for injury to any agent or servant occurring through the negligence of a fellow servant, without contributory negligence on his part, is limited in its application to quasi public corporations having franchises from the state, and operating railroads open to public travel or use. It does not apply to a logging road built and operated only for private purposes, and not as a common carrier.

2. SAME—INJURY OF SERVANT—CONTRIBUTORY NEGLIGENCE.

Plaintiff's intestate was employed by defendant as head brakeman and conductor of a logging train, in which capacity it was his duty to superintend the loading of the cars and the making up of the train, and to see that the logs were properly loaded, having reference, among other things, to their different lengths, so that the cars could be safely coupled together. While making up a train so loaded, he was fatally injured by a log which fell or was thrown from a car. There was no evidence to show negligence on the part of defendant in respect to the place where the work was done or the appliances, or in the employment of fellow servants, nor was there any direct evidence of the manner in which the injury occurred. Held, that, if it was not due to the negligent manner of loading, it resulted from a danger of the employment, of which deceased assumed the risk, and, if there was negligence in loading, being charged with its superintendence, he was guilty of contributory negligence, which precluded a recovery for his death.

At Law. Action by plaintiff, as administratrix, to recover damages for the alleged wrongful death of her intestate.

After the plaintiff had rested her case, counsel for defendant moved the court to instruct the jury to find a verdict for the defendant, on the following grounds: First. That there is no negligence shown on the part of the defendant by the evidence. Second. That from the evidence on the part of the plaintiff it appears that the injury was caused by one of the risks incident to the business in which the plaintiff had engaged. Third. That the evidence shows that the deceased was guilty of contributory negligence. Fourth. That, if there is any negligence at all shown here aside from that of the plaintiff's intestate, it was the negligence of a fellow servant. Fifth. That the danger and risk of a log falling off from one of these cars was open and apparent, and was one of the hazards of the employment, the risk of which was assumed by plaintiff's intestate.

Robert C. Saunders, for plaintiff.
Howard T. Abbott, for defendant.

LOCHREN, District Judge (orally). This is a motion to direct a verdict in favor of the defendant. A motion of this kind does not call for any exercise of discretion on the part of the court. It is a matter of strict right. If the evidence tends to sustain any facts upon which the plaintiff would be entitled to a recovery in case the jury find such facts from the evidence (and upon a motion of this kind the evidence must be construed most strongly in favor of the plaintiff), then there is a question for the jury, and the motion ought not to be granted. The fact that the son of the plaintiff was injured, so that he died, by a calamity which occurred while in the employ of the defendant, is sustained by the evidence, and is not seriously questioned. The only question is whether there is any evidence tending to show that his death, or the injury which caused his death, was caused by negligence which is imputable to the defendant, and for which the defendant is in law responsible. If there is no such evidence, there is nothing to support a verdict, if one should be rendered in favor of the plaintiff. Now, negligence is the lack of that care which a party is by law required to exercise under the particular circumstances of the case. If a party fails to exercise such care, and the result is an injury to another person, then the party guilty of the negligence is liable to the person injured for damages caused by the injury, providing there was no negligence on the part of the person injured which would prevent his recovery. The law, irrespective of the statute which has been referred to, requires an employer to exercise ordinary care in respect to the place in which the employé is put to work, and in respect to the appliances which he is to use, and the surroundings, so that they shall be reasonably safe; and with respect to fellow servants who are employed in the same business the duty of the master is to use ordinary care to see that only careful, competent, and suitable men are employed in the business. On the other hand, the employé assumes the ordinary hazards and risks of the business about which he undertakes to work. Some kinds of business are more hazardous than others; but, whatever the degree of hazard, that which is apparent, and belonging to the business that he engages in, is assumed by the employé, and he also assumes the risk of carelessness on the part of fellow servants. If the master uses ordinary care to select competent fellow servants, and, notwithstanding this, a fellow servant commits an act of negligence or carelessness which injures another employé, the master is not liable, because he had done all that the law requires of him if he selected competent and suitable men. Of course, experience shows that, notwithstanding that degree of care, servants will be guilty of negligence which may injure themselves or their fellow servants. Now, with respect to this particular injury, the business in which the deceased was injured is apparently a hazardous business. The handling of logs, loading and assisting in moving them,—they being ponderous articles, liable, if they fall upon a person, to do him great injury, and hazard his life and limb,—is a business which, in its nature, is a hazardous one. The hazard may be and is increased by the danger of carelessness on the part of the employés who are engaged in the business,—in

this case, in the loading of the logs. Aside from the statute, as I stated before, all these hazards are assumed by all of the employés who hire themselves out and engage in that business; and if, by reason of the negligence of themselves or their fellow servants, an injury occurs, and the master has used due care, and there is no fault in the appliances, the master is not responsible, and the injury that one may sustain is his own misfortune. In this case there is no evidence that there was any fault on the part of the master in respect to the place at which the work was being done, or in respect to appliances that were furnished by the master; nor is there any charge that the servants were known to be careless or ignorant, or that they were ordinarily so; so there is no lack of care cast on the selection of the fellow servants. Aside from the statute I have referred to, there would be no evidence making the master responsible for the injury which the employé suffered in this particular instance; and one thing to be considered is whether that statute applies to a case of this kind.

Section 2701 of the Revised Statutes of Minnesota of 1894 provides that any railroad corporation owning or operating a railroad in this state shall be liable for all damages sustained by any agent or servant thereof by reason of the negligence of any other agent or servant thereof without contributory negligence on his part. That would include responsibility on the part of a railroad corporation for negligence of a fellow servant, and it changes the law in that respect, but it does not change it with respect to the effect of contributory negligence. This statute, as stated in several decisions, would be unconstitutional, as being in the nature of class legislation, imposing a responsibility upon railroad corporations that is not imposed upon other employers of labor, if it were not from a consideration that it is a peculiar regulation with respect to quasi public corporations which have franchises from the state, granted for the reason that the public is interested in the business of these corporations, and for that reason the legality of such regulation by the state is maintained as a proper regulation for the safety of individuals and of the public generally with respect to corporations of this kind. It is perhaps a long stretch of the power of regulation to impose upon these corporations a liability for the acts of their servants that is not imposed upon other corporations or upon individuals, but the courts have sustained this particular regulation. It has been sustained by the supreme court of this state, and like statutes have been sustained in other states, and also by the supreme court of the United States; so it is beyond question now that this is a proper regulation, as far as the scope of this statute extends. So one question presented now is whether this statute applies to a railroad of this kind, which is not a public railroad, used by the public, and which is not a common carrier; for no person has a right to require that he be carried upon it, or to have his private goods carried upon it. It is a private concern, belonging to individuals, or to a company which is not a railroad corporation, and therefore does not come within the category of bodies who are invested with franchises for the use of the public, which

gives the state the right to make peculiar regulations for public safety. It does not come within the language of the statute, because it is not a railroad corporation; and the proviso in the statute indicates that the statute is intended to apply only to corporations of the character to which I have referred, possessed of franchises, open to public travel or use, because the proviso is that they shall not be liable for damage during the construction of a new road not open to public travel or use. It is said by counsel for defendant that it cannot apply to a railroad of this kind, because there was no such railroad in operation at the time of the passage of the act in 1887, and therefore it could not have been considered by the legislature. I do not know what the fact is as to that. My impression is that counsel is right as to the fact that there was no such railroad in operation at the time in this state, but I am not sure, and will not assume, whether that is the fact or not. The language in this statute indicates that it was not intended to include roads of this kind. But, if it were the fact that these railroads were in existence in the state, as they are now, then the presumption would be still stronger that they were not intended to be included in that act, for the reason that the language of the act would exclude them; and, if they were in operation, it must be presumed that the fact was known to the members of the legislature at that time. The fact that language was used which would ordinarily exclude would be stronger evidence that they were intended to be excluded than if there were no such railroads in operation at the time, and therefore they were not considered. I think it is true that an act may take effect upon business that was not carried on at the time when the act was passed if the language of the act is such that it will include that kind of business, although the same was not known at the time. But it seems to me the language of this statute does not include railroads of this kind; therefore I feel constrained to hold that the ordinary doctrine with respect to negligence on the part of the fellow servants applies in this case, and that such negligence is a part of the risk taken by the employé, and cannot be imputed to the employer.

Upon another branch of this case I think that the same result will follow, and that is the matter of contributory negligence. There is no direct evidence as to how this accident or calamity occurred. There is evidence as to how this particular car was loaded, and how cars were loaded in general. It appears the car was brought up to the skidways to which the logs are hauled from the woods for the purpose of being loaded; that the cars were placed opposite these skidways. But, as I understand the testimony, the cars are detached at these skidways, and are not coupled together, so that the cars would be loaded separately against the skidways, and afterwards coupled together for the purpose of being taken out. It appears that these cars are about 20 feet in length, and the logs to be loaded vary from 10 to 12 feet up to 22 or 24 feet. I think 24 is the longest that the testimony mentions. I do not know but one of the witnesses mentioned 26 feet, but I am inclined to think that 22 or 24 is the longest. So these logs are longer than the

cars, and necessarily project beyond the ends of the cars. If the logs were all of that length, it is evident they could not be loaded on cars of that length, and the latter be coupled together as cars are ordinarily coupled. But the long logs project over the ends of the cars, and, if they are opposite the ends of shorter logs, which do not reach the end of the car adjoining, of course they can be made to ride in that way. It appears from the testimony that the ordinary way of loading these cars with logs is to place as many as can be conveniently put on the bed of the car, and then logs are laid on top of these sloping up towards the center for a certain height, when chains are put around the logs, and drawn and hooked together; and then logs are laid on top of these chains, for the purpose of holding them down, and making them taut, so they will hold the logs properly; and it further appears that these logs on top of the chains sometimes, by reason of the motion of the cars, are liable to slip off or drop off. Now, the testimony is that the deceased was a young man of 19 years of age, industrious, and had been in the habit of working and earning wages from the time he was 13 years old; that he was of good habits, good disposition, and inclined to support his mother's family; and that he sent some of his wages to his mother from the time he commenced to earn wages, and to a considerable amount. Of course, as he had not yet reached the age of 21, his father would be entitled to the wages he would earn until he reached that age. So there is no question that the father was damaged by the death of the son. It seems that the deceased was employed as a brakeman upon that train. Up until a short time before that he had been employed upon another train with the witness Carl Johnson; Carl Johnson being the head brakeman, and the person who acted as conductor, and the deceased acted as his assistant. After that he had been changed to another train, where he assumed the duties and position of head brakeman and conductor, and he was in the discharge of these duties at the time he was killed. The testimony on the part of the plaintiff is that he had charge of the making up of the train; that the engineer moved according to his signals and directions in pushing the cars to which the engine was attached so as to connect with the other cars; that it was his duty to examine the loading of the cars, and see that they were safe when loaded and put into the train, before coupling them; further, that, if he was not satisfied with the loading, it was his duty to see that they were unloaded, and properly reloaded. It seems that these logs loaded on the cars were in plain sight, easy to be seen, some 12 feet in height, the body of the car being about 3 feet high; so that in passing from one car to another the position of the logs on the cars was plain to be seen, and in clear view. It was the duty of the deceased himself to see that the cars which he was about to hitch onto the train were properly loaded, so they could be safely attached to the other cars. There was nothing, so far as the evidence shows, to prevent his seeing the projection of any of the logs (if they did project) as he approached them. It was his duty to see that they were in proper position, so there would be no danger from them. I think

this was his duty so strictly that, if he attached cars that were improperly loaded, it would be such negligence on his part that, if another person had been injured, the injury would have been imputable to the master, if the case came within the statute of this state. But here, he being negligent himself, and being the person that was injured by that negligence, it comes under the head of contributory negligence, which would prevent a recovery.

It seems to me, upon both of these grounds, there is no evidence upon which the jury can lawfully find a verdict in favor of the plaintiff.

Gentlemen of the jury, the court directs that your verdict be for the defendant.