P. W. WHITE, Administrator of John L. White, v. THOMASVILLE LIGHT AND POWER COMPANY.

(Filed 24 November, 1909.)

**1. Electricity—Defects, Employee to Repair—Negligence, Rule of.**

An electric company does not owe the same duty to a competent workman employed to remedy a dangerous defect in its system as it does to the public, its patrons or its ordinary employees, in respect thereto; and when such employee is killed while thus engaged, it is error for the trial judge, in an action by his administrator for damages for the negligent killing, to try the case upon the theory that the same principles as to negligence apply.

**2. Same—Assumption of Risk—Contributory Negligence.**

An electric lighting company is not liable for damages for the death of its employee caused by a current of electricity from a defect in its system of wires which the employee, competent and properly instructed, and in the course of his employment, had undertaken to remedy, there being no suggestion or evidence that defendant had failed or refused to furnish proper implements or appliances with which to do the work and no negligence supervening on part of defendant, and if, upon competent evidence, the jury find the facts so to be, his recovery would be barred, for in undertaking to do the work the plaintiff assumed the risk; and if he did not avail himself of the appliances furnished, he would be guilty of contributory negligence.

**3. Evidence—Nonsuit—Defendant's Evidence.**

When evidence in defense is necessary to be considered in passing upon defendant's motion to nonsuit upon the evidence, the motion will not be sustained.

APPEAL from *Jones, J.,* April Term, 1909, of DAVIDSON.

Civil action, to recover damages for alleged negligent killing of intestate. The jury rendered the following verdict:

1. "Was the plaintiff's intestate's death caused by the defendant's negligence?"    Answer: "Yes."

2. "Did the plaintiff's intestate contribute to his own injury?"  Answer: "No."

3. "What damage, if any, is the plaintiff entitled to receive?"  Answer: "Five thousand dollars."

There was judgment on the verdict for plaintiff, and defendant appealed, assigning for error several exceptions noted during the progress of the trial, and to the judge's charge.

*E. E. Raper* and *McCrary & McCrary* for plaintiff.
*A. F. Sams* and *Watson, Buxton & Watson* for defendant.

HOKE, J., after stating the case: There was testimony on the part of the defendant tending to show that the defendant company owned and operated an electric plant in the town of Thomasville, N. C., and was engaged in supplying the town and citizens of the community with light and power; that just preceding the occurrence several Tungsten lamps had been burned out, indicating a defect somewhere in the system, very likely caused by a leakage from the power to the arc-light wire; and on 6 June, 1908, the intestate, having been employed for the purpose, was sent by the company to discover and repair the defect and replace one of the lamps, and while so engaged was killed by an electric current passing through his body from the arc-light wire to the ground.

There was no evidence that the intestate was an untrained or inexperienced hand; on the contrary, the testimony showed that he had received instructions and had much practical experience in the work, and had given intelligent instructions to other employees who were less careful or not so well informed.

Speaking to this question, the witness John W. Lambeth said: "White began with us when we organized and started to build the plant; was working for us on the day he was killed. He had not worked all the time during that period, but had a majority of the time. He was called our main lineman—a foreman—and had charge of the construction work under Mr. Bryant, the general manager. I had a small plant at the factory, and White kept it up for me for three years. He did not work all the time, but when I had any trouble he would help me out."

And B. W. F. Bryant, electrical engineer and general manager, testified: "I had instructed him and the other men under him several times; he had instructed the other men to be careful—men that were less careful than he."

Nor was there any suggestion or evidence tending to show lack of proper appliances with which to do the work; on the contrary, all the evidence was to the effect that safe and proper appliances were furnished by the company; nor was there evidence tending to show any negligence on the part of the company which arose or supervened after the intestate had undertaken the work or while he was engaged in it; and if this view is accepted, and the evidence believed by the jury, no recovery can be had by plaintiff, for the tragedy resulted either from the very defect he was employed and sent to remedy, or by his failure to use the appliances furnished for his protection, having been properly instructed concerning them; and in either event no responsibility would attach to the company. In the one case the intestate assumed the risk, and in the other he would be guilty of contributory negligence.

This doctrine of assuming the risks incident to defective machinery which a competent employee is expressly engaged to repair depends upon the principle that while the owner may, under certain circumstances, rest under obligations and duties to the public, or its patrons, or to its ordinary employees, by reason of defects importing danger to them, he owes no such duty to a competent workman who is employed expressly to discover and repair the defect, and is very well brought out in the case of *Spinning Co. v. Achord,* 84 Ga., 14-16. In the opinion in that case *Bleckley, C. J.,* thus speaks to the question presented: "While it is the duty of a master to furnish his servant safe machinery for use, he is under no duty to furnish his machinist with safe machinery to be repaired, or to keep it safe whilst repairs are in progress. Precisely because it is unsafe for use, repairs are often necessary. The physician might as well insist on having a well patient to be treated and cured as the machinist to have sound and safe machinery to be repaired. The plaintiff was called to this machinery as infirm, not as whole. An important part of his business was to diagnose the case and discover what was the matter. If he failed in this branch of his profession, it was either his fault or his misfortune. So far as appears, no one knew more of the state and condition of the machinery at the time than he did, and the object of calling him in the room was that he might ascertain the cause of the trouble and apply the remedy."

Other decisions by courts of high authority uphold and apply the principle. *Moore v. Railroad,* 167 Pa. St., 493; *Anglin v. Railroad,* 60 Fed., 553. And Mr. Thompson, in his Commentary on Negligence, sec. 4617, states it as an accepted principle, thus:

"From the foregoing, it may easily be concluded that an employee assumes the risk of injury from defects in premises, machinery, mechanical contrivances or appliances which he is employed to repair or which it is his duty in the course of his employment to repair."

This well-recognized principle was entirely ignored in the trial, and the question of defendant's responsibility has been determined solely in reference to its duties and obligations to the public or to its ordinary employees. It would not be proper to sustain defendant's motion to nonsuit, because the evidence referred to comes from defendant and was offered by it in support of its defense, and there was evidence of negligence *ultra* arising on the testimony introduced by plaintiff, but the point is sufficiently raised in several exceptions to the judge's charge, and for the error indicated there must be a new trial awarded.

New trial.