JOHN A. LANE v. NORTH CAROLINA RAILROAD COMPANY.

(Filed 20 December, 1910.)

1. **Instructions—Nonsuit—Evidence, How Considered.**

    Asking a special instruction that "upon all the evidence, if believed, the plaintiff was guilty of contributory negligence as a matter of law, and the jury will answer" the issue in defendant's favor, is equivalent to asking the direction of a nonsuit, and the evidence will be viewed on appeal in the light most favorable for the plaintiff.

2. **Master and Servant—Negligence—Defects—Duty to Repair—Assumption of Risks.**

    An employee whose duty it is to make a second inspection of freight cars before they leave the railroad yards in a train, and to see that the car doors are properly fastened, secured, and in condition, assumes the risks of his employment and cannot recover damages caused by a car door swinging loose and down at one end of the rail at the top, along which the door runs upon wheels, when he is furnished with appliances sufficient to repair a defect at the bottom of the door, readily discernible, and when its repair would have prevented the injury complained of.

3. **Master and Servant—Negligence—Duty of Master—Instructions—Defects.**

    The principle that a master is negligent in not instructing the servant in doing the work he is employed to do, or the custom of the master to furnish books of instruction, has no application when the cause of the injury complained of should have been dis-

cerned by ordinary observation, and no skill was required of the servant in making repairs which it was his duty to make with the instrumentalities furnished, and which would have prevented the injury complained of.

APPEAL from *W. J. Adams, J.,* at August Term, 1910; of DAVIDSON.

The plaintiff, in the fourth allegation of his amended complaint, thus details the manner in which he was injured and for which he sues to recover damages: "That on 28 November, 1907, and for some time prior thereto, the plaintiff was employed by the Southern Railway Company as a servant upon defendant's yards in the town of Spencer, for a valuable consideration, and while engaged in such work as a safety-appliance man and inspecting a train of freight cars which had been assembled for the purpose of being carried out over defendant's road, as aforesaid, and which was then standing upon a sidetrack constructed upon defendant's right of way and being used by its lessee, the Southern Railway Company, plaintiff in the course of his services as such servant came to a car in the night-time with the door open, which it was the duty of the plaintiff to close and fasten before allowing the said train to be carried out; when plaintiff endeavored to pull said door shut in the usual way—by catching one hand inside of said door and the other outside and under the bottom of said door—and while endeavoring to pull the said door shut, which was constructed to slide or roll on a track at the top of said door and along the side of said car by means of supports with rollers to carry the weight of the door on said track, and while pulling the door as aforesaid, the back hinge or roller of the door broke loose and allowed the part of the door-shutter which plaintiff was pulling to swing in the direction that plaintiff was pulling, and the supports which had been placed at the bottom of the door to secure the bottom of the door in place and keep it from falling or swinging were gone, and thereby allowed the shutter to catch plaintiff's arm between the edge of said door-shutter and the facing of the door or post at the side of the door, thereby mashing, bruising and mutilating plaintiff's arm in such a way as to

cause him to suffer great bodily pain, mental anguish, and permanently injuring said arm, permanently injuring his nervous system, and his general health."

The particular negligent acts are thus stated:

(1) In that said defendant's lessee carelessly and negligently allowed said car to be placed in a train of cars to be carried and transported by the defendant's lessee over its main line of roadbed without having the necessary supports at the bottom of said door to hold it in place, and without examining the hinge or roller at the top of the door, knowing that it would become in a defective condition by being transported without supports to hold the bottom of the door in its proper place.

(2) In that the defendant's lessee failed to supply the necessary supports for the bottom of said door when inspecting and repairing said car when it came upon the yards at Spencer, as it was the custom and was the duty of the defendant's lessee to do.

(3) In that defendant's lessee carelessly and negligently operated said car in a defective and dangerous condition and required plaintiff to close said door while said door was in a defective and dangerous condition; and, in addition thereto, further charged that defendant had failed to properly instruct plaintiff how to perform his duties and to give him a book of rules.

The defendant, denying any and all acts of negligence charged, further alleged:

"That if the plaintiff was injured at all, it was caused entirely by his own acts and conduct; that, as safety-appliance man, it was his duty not only to fasten and seal the doors, but to examine the doors and other parts of the car as to their condition, and if any was out of order to repair same, with the aid of others, if required, or to report same; and defendant alleges that if the said door or any of its hinges or rollers were in any way out of order, which is expressly denied, it was the duty of the said plaintiff to place the door in proper condition by repairing it, calling in the help of others if he could not repair it himself, or to make report of the same at once; and the defendant alleges that if said door or any of its hinges or rollers

were out of order, which is denied as aforesaid, that the plaintiff's injury was occasioned by his own neglect of duty, and carelessly or negligently pulling or forcing the door against his arm, and thereby causing any injury which he may have sustained."

The three issues of negligence, contributory negligence, and damages were submitted to the jury, who answered them in favor of plaintiff, and assessed his damages at $1,000. Judgment was rendered for plaintiff, from which defendant appealed to this Court.

*E. E. Raper, George W. Garland, and McRary & McRary for plaintiff.*

*Linn & Linn for defendant.*

MANNING, J. But one exception is presented in the record— the refusal of his Honor to give, at the request of the defendant, the following special instruction: "Upon all the evidence, if believed, the plaintiff was guilty of contributory negligence as a matter of law, and the jury will answer the second issue 'Yes.'" In determining the correctness of his Honor's ruling upon this instruction, we must consider the evidence in that view most favorable to the plaintiff, for if his Honor had given the requested instruction, it would have been equivalent to a nonsuit of the plaintiff.

It must be kept in mind that the admitted duties of the plaintiff were to inspect the freight cars grouped into a train, to discover defects that might render their transportation unsafe, and to repair such defects when discovered, or to have the defective car taken from the train of cars. The defendant had, as appears from the evidence, wisely adopted a system of double inspection of freight cars coming to its yards at Spencer, one upon their arrival and the second after they had been grouped into a train for an outbound trip. It was the duty of the plaintiff to make this last inspection. Experience, it seems, had demonstrated to the defendant that in shifting cars on its yards from track to track and making up an outgoing train, some injury might be done to the cars that would interfere with the

safe movement of the train, and the second inspection was en-
forced.   The plaintiff being assigned to this duty, he was
equipped with the necessary appliances to perform it; boxes con-
taining knuckle-pins, chains, hasps, staples, nails, grab-irons,
hammers, shoes, etc., were placed at convenient points on the
yards for the use of the inspector and repairer.   The plaintiff
was also provided with a lantern, specially made for the use of
inspectors in their night work.

The plaintiff testified that "When they (the freight cars)
came to me, I would look over the train, inspect it to see if the
doors were shut or anything broken during the shifting of the
train"; again, in answer to a question, he said that he was what
is called the safety-appliance man.

The particular manner in which plaintiff was injured is
stated in his complaint and testified to by him; it further ap-
pears in the evidence that the doors to the freight cars are slid-
ing doors, and "slide or roll on a track at the top of the door
and along the side of the car by means of supports, with rollers."
This track at the top primarily supports the weight of the door,
which varies from 150 to 250 pounds; but it appears and is
alleged by the plaintiff that a secondary support for these doors
was provided in the shape of two door-guides or "shoes" at-
tached to the side of the cars at the bottom of the doors.   While
it appears from the evidence that the primary purpose of these
door-guides or "shoes" was to prevent the doors from swinging
out at the bottom, it also clearly appears from the evidence of
plaintiff's witness that their secondary purpose was to support
the doors in case anything happened to the primary support,
and that these "shoes" were efficient for this secondary purpose.
The presence or absence of these "shoes" was easily detected at
a glance because of their size and placing, while the condition
of the top slide or track was not so easily discovered by the
plaintiff.   The door of this particular car at which plaintiff
was injured was partly open, and it was his duty to close it and
to discover and supply any missing appliance or defect in it.
It was charged for negligence against the defendant that it did
not specifically instruct the plaintiff as to the safe and proper
method of shutting these car doors; but the closing of a door is

such a simple act that we are unable to say that a grown man of experience in that work should be specifically instructed as to how to do it, any more than it requires a book of instructions or particular directions to be given as to the manner of using a hammer to drive a nail. The plaintiff's evidence showed that the doors were shut by pushing or pulling them shut, and there was no regular or prescribed way—either way was simple. One of the shoes at the bottom of the car door was off, and when plaintiff undertook to pull the door shut, the hinge or roller at the opposite top corner broke or came loose, and the door swung diagonally down and caught plaintiff's arm against the jamb of the door or doorpost. If the missing "shoe" had been replaced by plaintiff before his attempt to close the door, the injury could not have occurred. Plaintiff admits that if he had looked, he could readily have seen that the "shoe" was missing. Mr. Thompson, in his Commentary on Negligence, sec. 4617, states it as an accepted principle: "From the foregoing, it may easily be concluded that an employee assumes the risk of injury from defects in premises, machinery, mechanical contrivances or appliances which he is employed to repair, or which it is his duty in the course of his employment to repair." This is quoted with approval and applied by this Court in the recent case of *White v. Power Co., 151 N. C., 356.* The application of this principle determines this case, and we think, against the plaintiff.

It will further be observed that the injury to the plaintiff was not caused by the intervening act of any other servant or in any way aided or participated therein by such other servant; it was the plaintiff's own and sole act. This language of *Chief Justice Bleckley* in *Spinning Co. v. Achord,* 84 Ga., 14, states most clearly the controlling principle (this is also quoted in *White v. Power Co., supra*): "While it is the duty of a master to furnish his servant safe machinery for use, he is under no duty to furnish his machinist safe machinery to be repaired, or to keep it safe whilst repairs are in progress. Precisely because it is unsafe for use, repairs are often necessary. The physician might as well insist on having a well patient to be treated and cured as the machinist to have sound and safe machinery to be

repaired." The important part of plaintiff's duties was to hunt out and discover defects in the car that might interfere with its safe movement, and to repair such as he ought to discover. In our opinion, his Honor should have given the instruction prayed, and in failing to do so there was error, for which a new trial is directed.

New trial.