[S. F. No. 5996. In Bank.—September 27, 1913.]

MARY A. DUFFY et al., Respondents, v. HOBBS, WALL & COMPANY (a Corporation), Appellant.

Negligence—Master and Servant—Duty to Furnish Safe Working Place and Tools.—An employer is bound to use ordinary care to see that his employees have a safe place in which to work, and that the tools and appliances which they are to work with are in good condition and reasonably safe for the purposes intended. He is also bound to use ordinary care to maintain them in this condition.

Id.—Servant Charged With Duty to Keep Working Place and Tools Safe—Failure of Servant to Perform Duty.—Such rule, however, does not apply between a master and a servant who is employed to perform for the master this duty to the other servants, where the injury happens because of the failure of such servant to do that part of his duty.

Id.—Injury to Foreman of Sawmill—Fastening of Railing Becoming Defective Through Decay.—Where it was the duty of the foreman of a sawmill to take care that a railing and supporting posts situated alongside of a conveyer of refuse lumber were kept in good order and repair, his employer is not liable for personal

injuries suffered by him which were occasioned by the giving way
of the railing from one of such posts by reason of the defective
condition of its fastening caused by the decay of the post.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order refus-
ing a new trial.   John Hunt, Judge.

The facts are stated in the opinion of the court.

Samuel Rosenheim, Bernard Silverstein, and Joseph Roth-
schild, for Appellant.

Gillett & Cutler, F. A. Cutler, and F. W. Taft, for Respond-
ents.

SHAW, J.—The defendant appeals from the judgment and
from an order denying its motion for a new trial.

The object of the action was to recover damages arising
from the death of John Duffy, husband of the plaintiff, Mary
A. Duffy, and father of the other plaintiffs.   Duffy died from
injuries received while engaged at work in a large sawmill
owned by the defendant.   It is alleged that his death was
caused by the negligence of the defendant in failing to keep
the appliances in use safe and secure.

A part of the apparatus in the mill was a conveyer or ele-
vator to carry refuse from the saws and carriages and the mill
building to a point one hundred and seventy-five feet away,
where it was dropped to the ground and burned.   It inclined
upward from the building, so that at its extreme end it was
about forty feet from the ground.   It consisted of a wooden
trough built like a flume open at the top, thirty-two inches
wide and two feet deep.   Alongside and to the right of it there
was a plank walk sixteen inches wide, put there to enable the
workmen to pass along by the conveyer when necessary.   Be-
tween the walk and the conveyer was a wooden railing of two
by four scantling nailed to the top of wooden posts about
ten feet apart.   The rail was three feet higher than the walk
and one foot higher than the top of the conveyer.   An end-
less chain with cleats attached at intervals ran along in the
bottom of the conveyer and thus the refuse thrown into the
conveyer was carried to the end and dropped to the ground.

This refuse would sometimes catch and clog the conveyer and, in that case, some person would have to go out upon the walk and remove the obstruction. On the twenty-ninth day of May, 1907, in the afternoon, the conveyer became clogged in this way and Duffy and a workman named Smith went out to clean it. Smith stopped and began work just outside the mill building, Duffy passing beyond him. Smith observed Duffy until he had proceeded some ten feet beyond, but, being busy with his work, saw nothing further of him for a few minutes. Something then caused him to look up and he saw Duffy falling, as his head struck a log lying in a pool of water, under the conveyer at that point, sixteen feet below the walk. Duffy died from the injury in a few minutes. Immediately over the log one end of one of the pieces composing the railing was found to have come loose from the post to which it had been nailed and was hanging down over or on the plank walk. The other end remained fast. There was evidence tending to show that the post from which the rail had been detached was decayed, so that it would not hold nails firmly. The claim is that the rail was insecurely nailed to the post, that Duffy was using the rail as a support while at work cleaning the conveyer and that, because of its defective fastening, it broke away and caused his fall.

It appears from the evidence, without conflict, that Duffy had been in the employ of the defendant working in sawmills for thirty years in various capacities; that he had worked about this mill for eight years prior to his death; and that he had been foreman of that particular part of the mill for about two months immediately before his death, head sawyer therein for the ten months prior to that, and foreman again for a year or two preceding his becoming head sawyer. The part of the mill in his charge was called the upper floor and it included the conveyer aforesaid. He had the supervision of the forty-five men who worked in that part of the mill. His duties as foreman were to look after everything in that department, if anything went wrong or wanted repair to have it fixed, direct the men in their work, keep the conveyer in order, or see that it was done, hire and discharge the men as occasion required, see that the orders for lumber were properly and in due time filled, and to look after the general repairs of that part of the mill. Two millwrights were working under his

direction and it was their work to make repairs when directed to do so by him, and also without special orders to make any repairs that they observed as necessary to be done. But the rule of the mill was that all complaints of want of repairs, or defects, were to be made to Duffy and it was his duty to see to it and to observe generally whether any and what repairs were necessary or advisable and to make them or have them made. There was also a superintendent, Griffin, who had general charge of two mills belonging to the defendant, and a general superintendent, Keller, both of whom had power to order repairs made. But the part of the mill where Duffy was employed as foreman was in his immediate charge and control and he was looked to to see that it was kept in order and repair.

The railing in question, including the posts, was put up about six years before the injury to Duffy. It was made of pieces of lumber from the mill, of which there was an abundance lying about at all times. In the operation of the conveyer, sticks and timbers occasionally caught on the railing and broke it loose from the posts. It is not claimed that the posts and railing were unsafe when first constructed. In the course of nature the posts would ultimately decay and from this or other causes it had been necessary occasionally to replace a post.

The defendant, by a motion for a nonsuit, by a request that the jury be directed to return a verdict in its favor, and also by assignments of insufficiency of evidence, has presented the question whether or not, upon the facts we have stated, the defendant can be held liable for the injury and resulting death of Duffy.

The rule is well settled that an employer is bound to use ordinary care to see that his employees have a safe place in which to work, and that the tools and appliances which they are to work with are in good condition and reasonably safe for the purposes intended. He is also bound to use ordinary care to maintain them in this condition. This rule, however, does not apply between the master and the servant who is employed to perform for the master this duty to the other servants, where the injury happens because of the failure of such servant to do that part of his duty. In 4 Thompson on Negligence, section 4616, the author sums up the rule on this point as fol-

lows: "An employee cannot recover damages from his employer from an injury proceeding from a defect in something for the safe condition of which the employee himself was responsible. This rule applies where the servant himself undertakes with the master to see to the safety of the premises or appliances about which or with which he works." A reference to the cases will perhaps make the point more clear. In *Conroy* v. *Clinton,* 158 Mass. 321, [33 N. E. 526], the plaintiff was injured in a trench because it was not sufficiently braced to prevent caving. The shoring and bracing of the trench were entirely in his charge. The court says: "He was paid higher wages than the other workmen to superintend the work. There is no evidence to the contrary on this point. There is, it is true, conflicting evidence on the point whether he himself put in the shoring and bracing at the place of the accident; but as he had charge of this work, and had full opportunity before going into the trench to see its condition, the question whether he did it himself is immaterial. If there was any negligence, it was his negligence; and the defendant is not liable therefor." In *Direct N. Co.* v. *Anderson,* 29 Tex. Civ. App. 66, [69 S. W. 174], it was a part of Anderson's duty to keep the decks of a vessel clear and see that things were in their proper places. He was injured by stumbling over a siphon which had been left in the wrong place by another employee, of which neglect he had no knowledge. It was held that the misplacing of the siphon was imputable to him, as between him and his master, and that the master was not liable to him for the injury. In *Drum* v. *New England etc. Co.,* 180 Mass. 114, [61 N. E. 812], the plaintiff was injured by the breaking of a stepladder which he was using. It was a part of his duty to see that it was kept in repair. The court said "If there was any breach of duty it was on his part and he cannot avail himself of it. (*Allen* v. *Smith Iron Co.,* 160 Mass. 557, [36 N. E. 581].) If there was any latent defect in the ladder, the defendant would not be responsible." A similar question arose in *Pioneer etc. Co.* v. *Thomas,* 133 Ala. 279, [32 South. 15]. The court stated the rule to be that where an employee is himself the agent through whom the employer undertakes to see that the place and works are kept in good repair, he cannot complain of an injury from defects occurring therein which ordinary care would have pre-

vented. In *Williams* v. *Northern L. Co.,* 113 Fed. 382, the plaintiff was the head brakeman of a crew of trainmen engaged in loading logs onto a train of cars. It was his duty to see that the logs were properly loaded on the cars and to have them reloaded if necessary for that purpose and when· all was ready, to give the signal for coupling the loaded cars together. The case was of such a character that if he had caused cars to be coupled which were improperly loaded and injury had been caused to one of the crew thereby, the negligence would have been imputable to his employer, the defendant. He was himself injured because of the attempt to couple cars improperly loaded. The court held that he could not recover. In *Sible* v. *Wells Brothers Co.,* 148 Ill. App. 109, the plaintiff was a foreman whose duty it was to keep his eyes open and see the condition of things and if he saw anything wrong to have it corrected. The master looked to him for the supervision, inspection, and repair of the apparatus in use. The injury was occasioned by the lack of repair in such apparatus. The case is summed up in the syllabus as follows: "A foreman or vice-principal cannot recover from his master for injuries due to the neglect of an employee hired by him and under his direction and control, or for defects in construction and maintenance of appliances which it was his duty to construct and maintain." (See, also, *Lane* v. *North Carolina R. Co.,* 154 N. C. 91, [69 S. E. 780] ; *White* v. *Thomasville etc. Co.,* 151 N. C. 358, [66 S. E. 210] ; *Atlantic etc. Co.,* v. *Ryland,* 50 Fla. 200, [40 South. 24] ; 3 Labatt on Master & Servant [2d ed.], secs. 1259, 1260, [1st. ed.], secs. 343, 344; *Woelflen* v. *Lewiston-Clarkston Co.,* 49 Wash. 405, [95 Pac. 493] ; *Chicago etc. Co.* v. *Snyder,* 117 Ill. 385, [7 N. E. 604].)

Here it was the duty of Duffy to take care that the railing and posts alongside the conveyer were kept in good order and repair. He had undertaken to perform that obligation for and on behalf of the defendant, who relied on him to see that it was duly performed. The negligence, if any, which caused the injury, was the failure to examine the post to ascertain if it was decayed or had otherwise become incapable of holding nails securely and the failure to replace it with a new one, a thing which Duffy himself was under obligation to do. The neglect was his own. It would be unjust to hold his em-

ployer liable for the consequences of his own want of care and circumspection. If it be suggested that he had no notice of the bad condition of the post because the employees under him had failed to inform him thereof and that, therefore, he was not personally negligent, the answer is that neither had the defendant any notice thereof, and that it was relying on him to use ordinary care to ascertain the existence of such defects, and that having undertaken that task he assumed the risk of a failure of the subordinates to inform him thereof. If ordinary care would have discovered it, Duffy was the person who was negligent, as between himself and his employers. If it was a latent defect which ordinarily careful inspection and inquiry would not have discovered, the defendant would not be liable, since its duty demands only ordinary care.

The conclusion is that the evidence does not sustain a verdict against the defendant. We therefore find it unnecessary to consider the other questions presented in the case.

The judgment and order are reversed.

Lorigan, J., Sloss, J., Angellotti, J., Melvin, J., and Henshaw, J., concurred.

Rehearing denied.

Beatty, C. J. dissented from the order denying a rehearing and filed the following opinion on October 28, 1913.

BEATTY, C. J.—I dissent from the order denying a rehearing. The burden of proof was upon the defendant to sustain its defense that it was Duffy's own fault that the railing was out of repair. In my opinion there was an utter failure to prove that it was Duffy's duty as foreman of a gang of men to hunt for hidden and unsuspected decay in the timbers to which the guard-rail was nailed. The liability to decay in the timbers of any structure is a weakness inherent in the original plan, and if the lapse of time makes it the duty of any one to take the structure to pieces for the purpose of testing the soundness of concealed portions of the timbers I should say that was a duty devolving upon the general superintendent of the plant and not upon the foreman of the operatives. The evidence is that Duffy had authority to

direct petty repairs of evident defects, but to hold that he was at fault for not discovering decay in the top of the post to which a particular joint of the hand railing was nailed, is to say that it was his duty on taking the position of foreman to remove the three hundred feet of railing for the purpose of testing the soundness of each one of the thirty posts to which it was nailed—a proposition to which I cannot assent.