JOHN R. CLEMENTS, ADMR. OF CLINTON CLEMENTS, v. ELIZABETH CITY ELECTRIC LIGHT AND POWER COMPANY.

(Filed 11 September, 1918.)

**Electricity — Negligence — Evidence — Master and Servant—Proper Appliances—Trials—Questions for Jury.**

Where there is evidence tending to show that the plaintiff's intestate was killed by defendant's wires strung along the top of its poles, heavily charged with electricity; that his hand came in contact therewith as he was descending from his work; that it was customary, under the circumstances, for the employees to unstrap the belt holding them at the top of the pole before coming down, and rely on their hands and spurs while descending; that rubber gloves were in common use to insulate and protect them, and that the defendant had furnished the intestate with im-

proper or insufficient gloves, the proximate cause of the injury: *Held,* sufficient to take the case to the jury upon the question of the defendant's actionable negligence.

ACTION tried before *Whedbee, J.,* at June Term, 1918, of PASQUO-TANK.

From judgment of nonsuit plaintiff appealed.

*Ehringhaus & Small for plaintiff.*
*Leon T. Seawell, W. A. Worth, and Aydlett, Simpson & Sawyer for defendant.*

BROWN, J. The plaintiff's intestate was killed while engaged as a lineman in removing a defective arm from one of the poles carrying heavily charged wires in defendant's system. He had been ordered to do the work by Lewis, defendant's manager. The evidence tends to prove that, after removing the "dead arm," the intestate undertook to descend, and as he passed through the wires his hands came in contact with a heavily charged wire of about 2,300 volts. He was then seen to throw back his head and hang for an instant, while fire flashed and sputtered from his hands, and then his body fell out, "just like you shot a bird."

There is evidence tending to prove that the use of the safety belt is to hold the lineman in position while doing his work, and that when he undertakes to descend he must unstrap the belt from around the pole and rely on his hands and spurs in descending. There is evidence that rubber gloves are in common use to insulate and protect the lineman while grasping highly charged wires.

There is evidence that the gloves worn by intestate were defective and made of inferior substitute, and were useless as an insulator, but whether or not the lineman knew of the character and condition of the gloves does not appear. It is disputed as to whether the defendant or the lineman furnished the gloves. This is a most material point upon the determination of the liability of defendant.

If the defendant did not furnish them, and the intestate used his own gloves, the defendant cannot be held responsible for their condition.

There is some evidence from which the jury may infer that the defendant furnished them, and that their condition was the proximate cause of the injury. We will not consider the question of contributory negligence, except to say that the evidence does not show a state of facts from which no other inference can be drawn, and therefore a nonsuit upon that ground cannot be allowed.

We are of opinion that the issues raised by the pleadings should be submitted to the jury under proper instructions. *Register v. Power Co.,* 165 N. C., 234; *White v. Power Co.,* 151 N. C., 356; *Mitchell v. Electric Co.,* 129 N. C., 166.

Reversed.