[Civ. No. 1782. Third Appellate District.—September 26, 1918.]

## E. LA FLEUR, Respondent, v. M. A. BURNS LUMBER COMPANY (a Corporation), Appellant.

EMPLOYER AND EMPLOYEE—UNSAFE MACHINERY—INJURY TO FOREMAN —ACTION FOR DAMAGES—FINDING SUSTAINED BY EVIDENCE.—In this action by an employee against his employer to recover damages for injuries sustained through the imperfect and unsafe construction of certain lumber-mill machinery, which he was employed to operate and oversee, a finding that the machinery in question was imperfectly and improperly constructed, and was defective and unsafe, is held to be sustained by the evidence.

ID.—DEFENDANT WARNED BY PLAINTIFF OF UNSAFE CONDITION—PROMISE TO REPAIR.—In the same case it is also found that the evidence supports a finding that the defendant was warned by the plaintiff of the unsafe condition of the machinery and promised to repair the same, but failed to do so.

ID.—FACTS WARRANTING CONCLUSION OF EMPLOYER'S LIABILITY.— Where, in such case, the plaintiff was employed by the defendant to oversee and keep the mill running, he was furnished with defective and unsafe machinery which he had no authority to correct; he asked permission to make necessary changes, which was denied, although he was promised that these defects would be remedied; and he was at work in connection with said machinery in discharge of his duty when he received a serious injury by reason of such defective construction, these facts warranted the conclusion that the defendant was legally responsible for the damage suffered by the plaintiff.

ID.—EMPLOYERS' LIABILITY ACT OF 1911 — ASSUMPTION OF RISK AND CONTRIBUTORY NEGLIGENCE — EMPLOYEE'S KNOWLEDGE OF DEFECTS. Under the Employers' Liability Act of 1911 (Stats. 1911, p. 796), which, at the time of the accident involved in this action, was in force, and which changed the rule theretofore existing as to assumption of risk and contributory negligence, the obligation of the employer was not neutralized nor affected in any manner by the plaintiff's knowledge of the defects in the machinery.

Id.—Continuing in Employment With Knowledge of Defects in Machinery — Notice by Employee to Employer — Employer's Promise to Remedy.—In a case where the employee notifies an employer of the defects, in machinery on which the employment of the former requires him to work, and the employer promises to remedy such defects the employee is justified in continuing in the employment upon the faith of the promise, and the employer is deemed to have assumed the risk of the work, unless the danger arising therefrom is so glaringly obvious that no prudent man would undertake it, even under the direction and promise of the employer.

Id.—Contributory Negligence—Burden of Proof.—Even where contributory negligence is pleaded and may be considered as a defense, the burden of proof is on the defendant to establish it.

Id.—Duty to Correct Defects.—Under the facts shown and found in this action, it was not the duty of the plaintiff to correct the defects in the machinery, and he was not authorized to do so.

Id.—Duty of Foreman—Performing Work of Absent Employee.—It is a fair inference from the testimony of the plaintiff (the foreman) "that it was his duty to see that the mill continued to operate, and that if he observed the work being neglected in any way, it was incumbent upon him to see that it was properly attended to," that he was "in the discharge of his duty" at the time of the accident, although he was then performing the work of the "slasherman," who was absent.

APPEAL from a judgment of the Superior Court of Shasta County, and from an order denying a new trial. J. E. Barber, Judge.

The facts are stated in the opinion of the court.

John Ralph Wilson and Gillett & Cutler, for Appellant.

Dean & Carter, for Respondent.

BURNETT, J.—The action was for damages caused by an injury in a lumber-mill. The cause was tried without a jury, and the court found in favor of plaintiff in the sum of three thousand dollars. The appeal is from the judgment and the order denying the motion for a new trial. The only claim for a reversal is that the evidence is insufficient to support certain material findings. Of them, the first one assailed is as follows:

"That at the time aforesaid, to wit, on or about the fifteenth day of November, 1913, and while plaintiff was employed by

defendant as aforesaid, certain machinery in said mill which the plaintiff was required to operate and oversee was imperfectly and improperly constructed and was defective and unsafe; said imperfection and unsafeness was caused by live chains rising above live rollers, which said chains and said rollers were revolving and rotating at right angles with each other; that by reason of said live chains rising above said live rollers said machinery was dangerous and unsafe in this, that said chains would come in contact with and catch upon the lumber and other sawed materials which were rolled out on said live rollers, and said chains would forcibly throw said lumber or other sawed material off of said live rollers, said rollers being too short to properly convey the timbers which were usually rolled out on same." As to this finding it may be said that it is not disputed that, on said date, plaintiff was employed, as foreman, by defendant, to operate and oversee said machinery. That the said machinery was improperly constructed and that it was dangerous to operate, as specified in said finding, is abundantly supported by the testimony. There was strong evidence to the contrary, but with that, of course, we cannot be concerned. How is it possible to maintain that the trial court was not legally justified in its conclusion as to the character of the said machinery when we recall the following statements of witnesses? The plaintiff testified: "Basing my opinion upon my experience as a millwright, I would say that machinery as shown by the model is not properly constructed. The top of these chains ought to be under the surface of these rolls, and the rolls are too short for the timber they saw; they are twenty-four inches long and they should be thirty inches, or three feet long, anyway. The purpose of having the rolls along there is so you can run anything wide across it. The live skids and chains rise above the live rolls at a point almost halfway across. When the timber is caught by the live chains it pulls it off into the slasher-saws. We had to have a man standing there with a bar at the north end of that truss to keep crowding the timbers clear over on this side, in order to get them through, and lots of times they would have to crowd them on and follow them clear through in order to get them over . . . No mill is properly constructed that has the skids above the surface of the rolls. That skid should be below the surface."

The witness, G. R. Jones, an experienced millwright, also testified that in order to be properly constructed, "the skids must be below the rollers and the rollers ought to be longer."

Witness W. E. Lane testified that the machinery was defective for the same reason, and "the rolls that were put into the truss in said mill were two feet long. We put in these rolls at the order of Mr. Broadwell. They were furnished to us." Furthermore, that the purpose of these live chains is to "throw the slabs off the live rolls into the edger pits" and that the proper construction of a skid is "to have clearance from the rolls so the timber can pass over without catching. I mean below the live rolls."

W. H. Gusha also testified to the same effect and declared: "In the operation of the mill, the result would be that timber came along there and would strike these things there like it does there now, that wouldn't go over the thing. That would carry it over here into these saws. Anything—don't make any difference what it is slabs, boards, timbers or anything else."

We may quote this from Charles Noble's testimony: "That transfer skid is too high, too high to let your timbers come down," and as to the rolls he said they should be three feet long, "so that the machinery won't drop off. They don't always come down the rolls straight. If it is narrow rolls, they drop off."

There is no controversy as to the competency of these witnesses, nor is it pretended that the subject is not a matter of expert testimony. If the foregoing does not justify the court's finding as to the character of the machinery, then we are at a loss to understand what should be required.

Nor is there any more doubt as to the legal support for this finding: "That said defendant was, shortly prior to the said fifteenth day of November, 1913, warned by plaintiff of the defective and unsafe condition of the machinery in said sawmill, in the particulars hereinabove, in paragraph IV, set forth, and said defendant had, after being so warned by plaintiff, promised to repair said machinery, and to put the same in good repair and in a safe condition, but defendant despite said warning, and contrary to said promise, did fail and neglect to do so; that plaintiff had shortly prior to said fifteenth day of November, 1913, requested of defendant permission to repair said defective machinery, and to put the

same in a safe condition and had requested defendant for permission to place and keep the same in good repair, but defendant did at all times refuse to permit plaintiff and did fail to authorize plaintiff to put said machinery in a good and safe condition; that at no time was it the duty of plaintiff, nor did plaintiff have the authority or permission, nor had he at any time been delegated by defendant to put said machinery in good repair or in a perfect condition, nor did plaintiff at any time have in his charge or under his control the assistance or supplies or tools necessary to enable him to keep said machinery in good repair and in a safe and perfect condition or working order.''

Every material fact contained therein is asserted by the plaintiff in his testimony. He testified that after becoming foreman he directed the attention of Mr. Danforth, the manager of the company, to these defects and asked permission to overhaul the machinery, but Mr. Danforth said: ''We might do it some time but we can't do it now.'' As to the repairs he desired to make, the plaintiff testified: ''I was to build that truss over and I wanted to get rolls the same length that came from the head saw right straight through. I wanted to tear that slasher table out and shove it ahead, so that when the slab pulls through it won't catch in the conveyer and break the saws; I wanted twelve-inch rolls, so it would run above those skids, and get longer skids; the chains would run the same way only they would be under the surface of the rolls.'' As to his authority to make changes, he testified positively that he had no such authority ''without receiving orders from the managing officers. I had to make the application to Mr. Danforth; if anything broke I had to go to Mr. Danforth and get an order to get it. I couldn't do any repairs excepting keep the mill moving''; that he could not take down anything and put in new machinery without asking. ''The change I really wanted to make was to get longer rolls and bigger rolls and make a new truss that would hold up the weight right straight through.''

It is, however, contended by appellant that the trouble was with these slasher chains, that they performed no useful function, that they should have been removed by respondent, and, since he failed to do so, he is responsible for any damage resulting from their presence. There is testimony on behalf of appellant supporting this theory, but it is flatly contradicted

by respondent's showing.   The plaintiff testified: "There is a man working all of the time here at the end of this truss, whose duty it is to take a pickeroon when slabs come along, and throw them off the truss on to the table.   He moves them over so that they catch the chains and as soon as they catch the chains, then the chains carry them."   It is a fair inference from his testimony and other evidence in the record that these chains, if properly placed, were necessary for the efficient and successful operation of the machinery, and that, without them, the output of the mill would have been impaired.   That the chains were useful is also strongly confirmed by the circumstance that the mill was never operated for a day without them.   Even while Mr. Burns was foreman, during the summer of 1914, the chains were left on the truss and they were not removed until after the mill was closed down.   Nor is the situation affected by the consideration of the "automatic bumper" that was in use at one time.   There is evidence that it did not remedy the said defective construction of the truss and that it was discontinued before plaintiff took charge of the mill as foreman.   As to this he testified: "Well, we had a lot of trouble with it.   Sometimes we would use it, sometimes we couldn't use it.   It was simply a spring that was put on there; it was just a common little spring that came off.   It would be broken all the time, and it was almost impossible to keep it going and sometimes it was in use and sometimes it wasn't. . It wasn't in use when Mr. Broadwell left, I am pretty sure."   It also appears from the testimony of Mr. Broadwell that, when the bumper was in use, it was necessary to keep a man at the north end of the truss to guide the lumber and timbers away from the chains and over said truss. We may, therefore, regard the bumper as a feature of no moment in the determination of the cause.

The other important points are involved in the consideration of whether plaintiff was engaged in the performance of his duty at the time he claims to have received his injury, whether he was actually injured, and if so, whether it can be said to be the result of the unsafe condition of said machinery.

That he was doing work in the line of what was required of him under the circumstances as detailed by him is not disputed, and, therefore, we need not quote testimony to support the proposition.

As to the fact of the injury and how it occurred, plaintiff testified: "I was on the slasher-table and there was a timber 16x16 which was 4 pieces of 8x8 which came down the live rolls and the chains on the live rolls truss pulled it off and struck me in the back and crowded me toward the saw, and I swung around the end, and I had to crowd them back against the live chain and shove them clear back on the live chains and let them go through. As I done that I felt like I had been cut open in the groin. I had a pain all the time. I didn't know what it was, until I went and saw the doctor. It was the end of the timber that struck me . . . When I was struck I was standing some place halfway between the truss and the saws. The blow didn't knock me down because I braced myself. I could not have walked on ahead because I was too close to the saws to walk ahead; it crowded me." It appears, further, that immediately thereafter he told Mr. Danforth that he had been injured, but the manager walked away and did not answer him. There is testimony, also, that he told his wife about it, but it seems that he mentioned it to no one else. He continued to work for the company, to look after the operation of the mill for two weeks thereafter, until it closed down on December 2d. He went to see Dr. Cornish on December 3d following, and on the eighth day of the month he was operated on for hernia. It may be admitted that plaintiff's story appears somewhat strange, singular, and suspicious, but we cannot say that it is inherently improbable. Attention is devoted by appellant to certain circumstances that tend to discredit his account of the occurrence, but they are not of sufficient weight, considered either separately or in the aggregate, to compel the conclusion that plaintiff was either mistaken in any material point or was fabricating any portion of the story. The circumstances surrounding the transaction were, no doubt, carefully considered by the trial judge, who concluded that plaintiff realized and related what happened, and his finding to that effect is not to be overturned here. It would accomplish no good to comment upon his story, as we find no sufficient reason to take it out of the rule that commits the determination of the weight of the evidence and the credibility of the witnesses to the trial judge when passing upon questions of fact. It may be said, also, to be a reasonable inference from plaintiff's testimony that the accident would not have occurred had it not been for said

defects in the construction and operation of said machinery. The timbers were thrown off by reason of the extension of the chains over the rolls. The circumstance of the width of said rollers was probably, also, a factor in the movement of said timbers. It may be that if the man, whose duty it was to stand near the truss and guide with a "pickeroon" the movement of the lumber, had been in his place, the accident would not have happened, but we must accept the statement of plaintiff that the former was not at his post. Plaintiff was not responsible for this condition, and it does not and cannot weigh in appellant's favor.

We may then briefly recapitulate the facts as follows: Plaintiff was employed as foreman by defendant to oversee and keep the mill running; he was furnished with imperfect and unsafe machinery which he had no authority to correct; he asked permission to make the necessary changes, but his request was denied, although he was promised that the defects would be remedied; he was at work in connection with said machinery in discharge of his duty when he received a serious injury by reason of said defective construction.

That these facts warranted the conclusion that defendant was legally responsible for the damage suffered by plaintiff cannot be disputed. The duty of the employer to provide for the employee a safe place and safe machinery for his work is, of course, well settled. This obligation was not neutralized nor affected in any manner by the knowledge of the defects on the part of respondent. At the time of the accident, the "Employers' Liability Act of the state of California" of 1911 was in force. (Stats. 1911, p. 796.) That statute changed the rule theretofore existing as to assumption of risk and to contributory negligence. Moreover, in a case where the employee notifies an employer of the defects and the latter promises to remedy them, the former is justified in continuing in the employment upon the faith of the promise; and the employer is deemed to have assumed the risk of the work, unless the danger arising therefrom is so glaringly obvious that no prudent man would undertake it even under the direction and promise of the employer. (*Anderson* v. *Seropian,* 147 Cal. 201, [81 Pac. 521].) It cannot be said that such obvious danger existed in this case. The court below was justified in concluding that by reason of the said defects the danger of the work was augmented, but it would be unreasonable to hold

that it was thereby rendered so perilous as to terrify and repel the man of average caution.

In reference to ''contributory negligence,'' it may be said that it was not pleaded, but, if we may consider it, the burden of proof was upon the defendant to establish it, and there is sufficient ground for holding that plaintiff was not so chargeable.

It is, however, strongly urged by appellant that it was the duty of respondent to correct the defects, that he was charged with full responsibility to keep the machinery in repair, that he was authorized to do whatever was necessary for the successful operation of the mill, and that the case is one for the application of the doctrine enunciated in *Duffy* v. *Hobbs, Wall & Co.,* 166 Cal. 210, [L. R. A. 1916F, 806, 135 Pac. 1093]. Therein it is said: ''Here it was the duty of Duffy to take care that the railing and posts alongside the conveyer were kept in good order and repair. He had undertaken to perform that obligation for and on behalf of the defendant, who relied on him to see that it was duly performed. The negligence, if any, which caused the injury was the failure to examine the post to ascertain if it was decayed or had otherwise become incapable of holding nails securely and the failure to replace it with a new one, a thing which Duffy himself was under obligation to do. The neglect was his own. It would be unjust to hold his employer liable for the consequences of his own want of care and circumspection.''

But it is only necessary to notice two vital circumstances that distinguish this case from that. Herein, the defect was not hidden or concealed. It was obvious and well known. Again, the court found upon sufficient evidence, as we have already seen, that it was not the duty of plaintiff to correct the defect and he was not authorized to do so. Manifestly, he could not be chargeable with negligence for his failure to do something not within his authority and which it was the duty of defendant to perform.

Of course, we have considered the case upon the theory supported by the evidence in favor of plaintiff. The mistake made by appellant, one to which appellate courts often have occasion to advert, is in assuming as true the testimony favorable to its contention and ignoring the evidence upon which the findings are based. It is true that certain statements made by respondent, if considered alone, lend some support

to appellant's contention, but the whole of his testimony, when fairly regarded, is consistent only with the position that it was not the duty of respondent nor was he authorized to correct said defect.

Some other matters of minor importance are discussed by counsel, but it would not be profitable to notice them further.

The judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 26, 1918, and the following opinion then rendered thereon:

THE COURT.—The able counsel for appellant in their petition for rehearing lay particular stress upon the point that the plaintiff was not in the discharge of his duty at the time of the alleged accident, but was performing the work of the slasher-man, who was absent. Hence, the contention is made that the doctrine of the Duffy case applies to the facts herein. The proposition was not elaborately treated in the opinion, but it was considered by the court, and it was deemed sufficient to make the general statement, based upon the testimony of plaintiff, that he was at work "in discharge of his duty." It was a fair inference, indeed, from his testimony that it was his duty to see that the mill continued to operate and that, if he observed the work being neglected in any way, it was incumbent upon him to see that it was properly attended to. He was not required to stop the mill and go in search of the slasher-man, but he was authorized to take his place during his absence. In determining the matter we must, of course, regard the rule that leaves the credibility of the witnesses to the jury or the trial court.

This case has received our very careful consideration, and while we are not insensible to the force of appellant's argument, we are constrained to hold that there was a sufficient showing within the established controlling principles of law to warrant a finding upon the merits in favor of plaintiff. The petition for rehearing is denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 25, 1918.