SARAH KOWALSKY, as Administratrix of the Estate of MEYER KOWALSKY, Deceased, Respondent, *v.* THE CONRECO COMPANY, INC., Appellant, Impleaded with Others.

(Argued March 14, 1934; decided April 17, 1934.)

*William B. Davis* and *E. C. Sherwood* for appellant. The complaint should have been dismissed as to the defendant-appellant. (*Shillak* v. *White*, 136 N. Y. 625.) The repair of the bar and its fastenings as well as the replacement of the window pane was incidental to the performance of the contract between the defendant Conreco Company and the defendant Moreng. When the Conreco Company made a contract with a competent and experienced iron worker to remedy all defects, it had done its duty, if the defects were being remedied with due speed. (*Engel* v. *Eureka Club*, 137 N. Y. 100; *Doremus* v. *Auerbach*, 176 App. Div. 512; *Grim* v. *Lehigh Valley Coal Co.*, 171 App. Div. 493; 227 N. Y. 558; *Jehle* v. *Ellicott Square Co.*, 31 App. Div. 336; *Joyce* v. *Convent Ave. Constr. Co.*, 155 App. Div. 586; *Hogan* v. *Arbuckle*, 73 App. Div. 591; *Murphy* v. *Altman*, 28 App. Div. 472; *Silverman* v. *Binder*, 130 App. Div. 581; *Callan* v. *Pugh*, 54 App. Div. 545.)

*Max M. Hirson* and *Max L. Rothenberg* for respondent. The defective condition having been created and maintained by the defendant-appellant, it is not relieved of liability by delegating the obligation of repair to others. (*Haefeli* v. *Woodrich Engineering Co.*, 255 N. Y. 442; *McGlone* v. *Angus, Inc.*, 248 N. Y. 197; *Christensen* v. *Hannon*, 230 N. Y. 205; *Thomas* v. *Solvay Process Co.*, 216 N. Y. 265; *Hess* v. *Bernheimer & Schwartz Brewery Co.*, 219 N. Y. 415; *Campbell* v. *De Parma*, 183 N. Y. Supp. 679; *Caspersen* v. *La Sala Bros.*, 253 N. Y. 491; *De Lee* v. *Pardy Constr. Co.*, 249 N. Y. 103; *Herman* v. *City of Buffalo*, 214 N. Y. 316.)

CRANE, J. The Conreco Company, Inc., was the owner of premises 16–18 West Third street, borough of Manhattan, New York city, which consists of a seven-story loft building used for business purposes. The fire department of the city of New York had placed a fire violation on these premises on December 8, 1926. Practically all

the iron window shutters were defective, corroded, full of holes and in need of extensive repairs. The order of the fire department directed the owner to replace and repair the iron window shutters and their iron appurtenances. This included the iron horizontal bar at the middle of each window to which the shutters were fastened when closed. Joseph Finneran, inspector of fire prevention in the fire department, who made the report, testified that he included the " bar in the shutters. Q. So that when you say the shutter do you include in that shutter, the hooks and the bar and anything used to fasten the shutter or keep it from swinging or closed? A. Yes, sir, and hinges."

On January 19, 1927, the owner wrote the fire department, " Regarding order 5335-F to replace the defective shutters with proper iron shutters at all openings, we wish to inform you that we are receiving estimates for this work and the order will be given out within a few days," and on February 17, 1927, another letter informed the chief of the bureau of fire prevention that an order had been given out to the Joseph Moreng Iron Works, 208 East Nineteenth street, to do the work. The contract with these " works " required the repairs to be acceptable to the fire department including painting " as we wish to have this violation dismissed at the earliest possible moment." Joseph Moreng who took the contract, testified that to obtain the release of the violation was part of his job. The contract called for doing all work necessary to achieve this end. " I couldn't get my money until the violation was removed." The painting also included all " the bars, the hooks and the plates. Q. I call your attention to your contract with Jennings & John (subcontractors). Don't you specifically provide for the replacement of bars and the repair of them? The Court: I sustain the objection. I think he has given you a picture enough that he included the bars." Further on in the record the court asks of Moreng: " Let us not get

excited. Do you know that the contract you made with John, Mr. Moreng, contained this clause: ' Also repair and adjust all shutters on said building and furnish all necessary catches, hooks, cross-bars, hooks and eyes,' *et cetera;* do you know that was in it? The Witness: I do."

John, the subcontractor, also testified that in making his bid to Moreng he went over and tried every bar and shutter, open and closed. He noticed the fastening of bars, the nature of the screws and their heads. Every bar, he says, was tight.

The point to this recital of the evidence is that the owner gave out repair work to be done which included fixing and fastening any loose or defective bars, all a part of the order given by the fire department.

Moreng sublet this contract to Alexander John, doing business under the trade name and style of Jennings & John. Had John or his men been hurt by an unsafe or insecure shutter or bar-fastening, the owner of the building would not have been liable. He had employed them to make the repairs, to remove the danger, to fasten and secure the bars and shutters. No responsibility rests upon an owner of real property to one hurt through a dangerous condition which he has undertaken to fix. The duty of an owner to repair implies that the workman employed to make the repair assumes the risk. The law that an owner must keep the place reasonably safe for a contractor and his subcontractors does not apply where the work itself is of an unsafe nature or the defects are due to the imperfect and negligent work of the contractor himself.

An employee cannot recover for injuries received while doing an act to eliminate the cause of the injury. As was said in *Mullin* v. *Genesee County El. L., P. & Gas Co.* (202 N. Y. 275, at p. 279): " The reason for this exception to the general rule is that it would be manifestly absurd to hold a master to the duty of providing a safe place when the very work in which the servant is engaged makes it

unsafe. If a man is engaged in tearing down a house he is constantly exposed to dangers of his own creation; and in such a case all those who are engaged in the same common purpose are fellow-servants for whose negligence in executing the details of the work the master is not liable, even though ' the work is done in successive stages, different parts thereof being devolved upon different persons, and the labor performed by one set of employees being prior in time to that performed by another set.' " (See, also, *Hess* v. *Bernheimer & Schwartz Brewing Co.*, 219 N. Y. 415.)

Therefore, if John or his employee had fallen out the window because of a defective shutter bar no recovery could have been had against the owner. The defect John was hired to remove. Had he failed to do so, it was his own fault; or had he fallen in doing any other part of the work, it was a danger he and his employees assumed.

John undertook to repair all the shutters, bars, nuts, bolts, fastenings to the rear windows of the building and in doing so broke the glass in some of the windows. He had not finished his work as it had not been accepted by the fire department, the owner or his contractor. When notified about the broken glass, he said he would fix it at once, and undertook to do so. He sent Meyer Kowalsky who, while putting a pane of glass in a window on the seventh floor, leaned against or took hold of the cross-bar, which gave way, causing his death. This action is brought by Kowalsky's administratrix to recover damages for the negligence. The negligence if any was that of John, the subcontractor who had contracted to fix the window-bars, and who from the evidence apparently failed to do so. The owner is not liable for this unfortunate accident on the ground that he had furnished John and his employees or subcontractor an unsafe place to work, as Kowalsky, John's employee or subcontractor, was killed through defects which John was in the act of

repairing. Neither is the owner liable for the negligence of John in doing or failing to do his work; Kowalsky was on the premises to help John complete it so as to remove fire department violations and get his pay.

The judgment, therefore, so far as appealed from, should be reversed and the complaint dismissed, with costs in all courts. (See 264 N. Y. 674.)

POUND, Ch. J., LEHMAN, O'BRIEN, HUBBS and CROUCH. JJ., concur; KELLOGG, J., not sitting.

Judgment accordingly.