**J. R. WHITLOW, Appellant,**

v.

**SEABOARD AIR LINE RAILROAD COMPANY and Western Union Telegraph Company, Appellees.**

**No. 6920.**

United States Court of Appeals Fourth Circuit.

Argued Jan. 12, 1955.

Decided April 16, 1955.

G. T. Carswell and Hunter M. Jones, Charlotte, N. C., for appellant.

John S. Cansler, Charlotte, N. C. (Cansler & Cansler, Charlotte, N. C., on brief), for appellee Seaboard Air Line R. Co.

H. B. Campbell, Charlotte, N. C. (Tillett, Campbell, Craighill & Rendleman, Charlotte, N. C., on brief), for appellee Western Union Telegraph Co.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from a judgment on a directed verdict for defendants in an action to recover damages for personal injuries. Plaintiff appellant was a lineman employed by the Harrison-Wright Company, which had a contract with the Seaboard Air Line Railway Company to install additional wires on a line of telephone or telegraph poles maintained on its right of way by the Western Union Telegraph Company and to make repairs on the line in connection with the installation. He was injured as the result of the falling of a defective pole on which he was working. Plaintiff has received compensation for his injury under the North Carolina Workmen's Compensation Act, G.S.N.C. § 97–1 et seq., and asks no recovery herein against his employer, but brings his action against the Railway Company and the Telegraph Company on the ground that they were negligent in failing to inspect the pole and give warning of its condition and that this negligence resulted in his injury.

The facts are that the line of telephone or telegraph poles were erected on the right of way of the Railway Company by the Telegraph Company under the terms of a contract, which provided that the Railway Company might make use of the poles for certain purposes including the carrying of telephone and signal wires and cables of the Railway Company. The Telegraph Company maintained the line of poles and inspected it from time to time. In 1951 the Railway Company decided to install a telephone line on these poles and entered into a contract with the Harrison-Wright Company to do the work. This involved making changes in the pins and cross arms on the poles and the shifting of existing telephone wires, all of which necessitated the climbing of the poles by linemen. Shortly after the work was begun, the contractor discovered that many of the poles on the line were in such bad condition that they would have to be replaced or reset before the work contracted for could be done, and a supplemental contract was thereupon entered into that the contractor should do this work also and be paid the cost of materials and labor necessary plus 20%. While the supplemental contract made no specific mention of inspection, it is clear that inspection was contemplated, as the work could not be adequately done without it. The contractor accordingly undertook to make a thorough inspection of the poles, providing an inspection crew whose duty it was to precede the linemen, inspect the poles and replace or reset them where this appeared to be necessary. The cost of all of this was billed to and paid by the Railway Company.

Plaintiff was an experienced lineman working with the men who were shifting wires and making the necessary changes in the pins and cross arms. He had climbed one of the poles and was engaged in shifting wires, when the pole ahead of him, on which another lineman was working, broke and, because the two poles were connected by wires, in falling pulled over the pole on which he was working and caused it to break and fall also. There was evidence from which the jury could have concluded that both poles were rotten and defective to the point that they were unsafe and that this would have been disclosed by adequate inspection.

On these facts there would be no question as to plaintiff's having made out a case of negligence for the consideration of the jury if the party sued were his employer, the contractor. The contractor, however, is protected from suit by the Workmen's Compensation Act under which plaintiff has received compensation. And we think there would be no question as to the evidence being sufficient to take the case to the jury on the question of negligence against the defendants here in the absence of the contract for the repair of the line which carried with it the obligation to inspect as well as to repair. If there had been nothing more than a contract to install cross arms and shift wires, the contractor and its employees would have had a right to assume, in the absence of anything appearing to the contrary, that proper inspection of the poles had been made and that they were reasonably safe to be used for the purpose of carrying on the work contracted for; and, in the absence of contributory negligence barring recovery, both the Railway Company and the Telegraph Company would have been liable for injuries resulting from their defective condition and from failure to give warning thereof,—the Railway Company on the ground that it was providing the premises on which the work was being done, the Telegraph Company on the ground that it had undertaken the duty of maintaining and inspecting the line of poles. See Florida Power & Light Co. v. Robinson, Fla., 68 So.2d 406; Murphy v. Rochester Telephone Co., 208 App.Div. 392, 203 N.Y.S. 669, affirmed 240 N.Y. 629, 148 N.E. 735; Rose v. Missouri Dist. Telegraph Co., 328 Mo. 1009, 43 S.W.2d 562, 81 A.L.R. 400; Terrell v. City of Washington, 158 N.C. 281, 73 S.E. 888; 35 Am.Jur. pp. 957–958; Note, AnnCas. 1913C, page 754.

In the case before us, however, not only was there notice to the contractor of the defective condition of the line of poles, but this had been made the subject of express contract under which the contractor undertook to make the necessary repairs; and the case falls within the rule stated by Mr. Justice Sebring in Florida Power & Light Co. v. Robinson, supra [68 So.2d 410], as follows: " * * * it is obvious that where the employee is injured as the proximate result of conditions or defects which his employer, the independent contractor, is engaged to correct, liability cannot be predicated on the mere fact alone that those conditions were unsafe. 57 C.J.S., Master & Servant, § 603." See also Kowalsky v. Conreco Co., 264 N.Y. 125, 190 N.E. 206; McCarty v. Louisville & N. R. Co., 202 Ky. 460, 260 S.W. 6; Broecker v. Armstrong Cork Co., 128 N.J.L. 3, 24 A.2d 194; Metallic Gold Mining Co. v. Watson, 51 Colo. 278, 117 P. 609, Ann.Cas.1913A, 1276; Zeledon v. Bowery Savings Bank, 195 Misc. 933, 85 N.Y.S.2d 414; Barrows v. Leath & Co., of Janesville, 258 Wis. 154, 44 N.W.2d 918. Cf. Archer v. Eldredge, 204 Mass. 323, 90 N.E. 525; Lane v. North Carolina R. Co., 154 N.C. 91, 69 S.E. 780; Chesapeake & O. R. Co. v. Hoffman, 109 Va. 44, 63 S.E. 432.

In Kowalsky v. Conreco Co., supra, contract was made for repairs on a house. An employee of a subcontractor was killed as a result of a defective condition which was to be repaired under the contract. In reversing a recovery in favor of the deceased employee, the court, speaking through Judge Crane, said, 190 N.E. at page 208:

"The negligence, if any, was that of John, the subcontractor who had contracted to fix the window bars, and who from the evidence apparently failed to do so. The owner is not liable for this unfortunate accident on the ground that he had furnished John and his employees or subcontractor an unsafe place to work, as Kowalsky, John's employee or subcontractor, was killed through defects which John was in the act of repairing."

In Broecker v. Armstrong Cork Co., supra, the Court of Errors and Appeals of New Jersey dealt with a case where an employee of a contractor was injured

while repairing a defective roof. The Court said, 24 A.2d 195–196:

"It is true that under the cited cases an employee of one who holds a contract to perform work on premises for the owner or occupier thereof, and who enters the premises to perform that work, is there by the implied invitation of the person for whose benefit the work is to be performed. It is also the rule that ordinarily an owner or occupier of lands, who, by invitation, express or implied, induces persons to come upon the premises, is under a duty to exercise ordinary care to render the premises reasonably safe for such purposes. But that rule is subject to exceptions, * * *. In our opinion the logic of the situation requires that there be a further exception in such a state of facts as exists when an independent contractor, or the employee of an independent contractor, comes upon lands, at the instance of the owner or occupier, to correct the precise condition which causes the injury."

Very much in point is the case of Storm v. New York Telephone Co., 270 N.Y. 103, 200 N.E. 659, 661, in which a lineman was killed by the falling of a defective telephone pole, where notice of its unsafe condition had been given to his employer who was engaged in replacing defective poles. In holding that this was sufficient to absolve the Telephone Company and that liability on its part could not be predicated of the failure to give notice to the lineman personally, the Court of Appeals of New York, reversing the Appellate Division, 243 App.Div. 581, 276 N.Y.S. 191, said:

"Did the defendant exercise reasonable care to warn the deceased lineman? The defendant notified the assistant district superintendent and the foreman of the lighting company, present at the place where the work was being performed, that the pole was in a dangerous condition and that commensurate care should be taken. A similar warning was given to the district superintendent of the lighting company. Warning of danger was thus given to all men in charge of the work and to all supervisory officials of the decedent. Frequently work is done on telegraph or telephone poles that are in a dangerous condition. It is customary for the workers to pike or guy such poles, thereby eliminating the danger. It was reasonable for the defendant to expect that the Westchester Lighting Company would employ such safety measures after it had been warned of the danger. 'The risk reasonably to be perceived defines the duty to be obeyed.' * * To require the defendant to bring notice home to every employee of the lighting company who might possibly be involved on this job on penalty of otherwise failing in duty would result in imposing a standard of duty exceeding reasonable bounds."

Here the contractor discovered the defective condition of the line of poles and entered into contract to make the necessary repairs. In the language quoted above it "would result in imposing a duty exceeding reasonable bounds" to require the Telegraph Company and the Railway Company to give further notice of the defective condition to the employees of the contractor. Both the Railway Company and the Telegraph Company could reasonably assume that the contractor would take the necessary precautions for the protection of its employees working on the line, where repairs were admittedly necessary and the contractor had undertaken to make them.

It is argued that the plaintiff was not injured while engaged in making repairs on the poles but while shifting wires and making changes in the pins and cross arms. This is, of course, true; but we do not think it affects the liability of defendants. The question is whether or not there was a breach of duty owing to plaintiff by defendants to warn as to the condition of the poles; and the answer is that defendants discharged their duty

in this regard both to the contractor and to its employees when the contract was made with the contractor providing for the resetting of poles where necessary and the inspection which this necessarily entailed. After that, it would have been absurd for either the Railway Company or the Telegraph Company to have made an inspection of the poles. They were certainly justified in relying on the contractor to make the poles safe for the work of its own employees when it had undertaken to do this and was to be paid cost plus 20% for doing it. If there was negligence in failing to warn plaintiff of the defective condition of the poles, it was clearly the negligence of the contractor and not of defendants.

As plaintiff's injury occurred in Georgia, the law of Georgia is of course applicable; and very much in point is the Georgia decision of McDade v. West, 80 Ga.App. 481, 56 S.E.2d 299, 302, where an employee of a contractor was injured as the result of the defective condition of a smoke stack which the contractor was employed to paint. In holding that there was no liability on the part of the owner to the injured employee, the court said:

"Presumably the independent contractor was employed for his superior knowledge of and experience with smokestacks and possessed the skill necessary to determine the condition of the smokestack. Furthermore, if it could be said that the duty to procure inspection by an expert is the duty of ordinary care, if it is for one party it is the same for another, and the parties had equal means to discover the defects. Our decisions seem to predicate the nonliability of owners of property, or contractees, to the employees of independent contractors, under circumstances where the work is free from the direction and control of the owner, or contractee, and possession of the premises is not retained by the contractee, either in whole or in part, on the fact that the servants of the contractor, or others coming up-

on the premises at the invitation of the independent contractor, are invitees of the independent contractor and not of the contractee."

See also Butler v. Lewman, 115 Ga. 752, 42 S.E. 98.

Affirmed.