Giovanni PATALANO, Gelsomino Patalano and Leonardo D'Alessandro, Plaintiffs,

v.

AMERICAN PRESIDENT LINES, INC., Aktieselkabet Dampskibsselskabet Svenborg (also known as d/a/s Svenborg), and Dampskibsselskabet AF 1912, Aktiesleskab (also known as Steamship Company of 1912), Woodley Maritime Corp., and Costmare Shipping Company, S.A., Defendants.

American President Lines, Inc., Aktieselkabet Dampskibsselskabet Svenborg (also known as d/a/s Svenborg), and Dampskibsselskabet AF 1912, Aktiesleskab (also known as Steamship Company of 1912), Woodley Maritime Corp., and Costmare Shipping Company, S.A., Third–Party Plaintiffs,

v.

Howland Hook Container Terminal, Inc., Third–Party Defendant.

No. 01CV4634(NG)(MDG).

United States District Court,
E.D. New York.

June 24, 2004.

Martin Lassoff, New York City, for Plaintiffs.

Harry V. Osborne, II, Evans, Osborne, Kreizman & Bonney, Redbank, NJ, John F. Karpousis, Freehill, Hogan & Mahar, Thomas L. Tisdale, Tisdale & Lennon, LLC, New York City, for Defendants.

Mark Francis Muller, Freehill, Hogan & Mahar, LLP, New York City, for Third–Party Plaintiffs.

Gregory W. O'Neill, Hill, Betts & Nash LLP, New York City, for Third–Party Defendant.

## OPINION AND *ORDER*

GERSHON, District Judge.

This action for damages was brought by two longshoremen, Leonardo D'Alessandro and Giovanni Patalano, who were injured in February of 2001. Giovanni Patalano's wife, Gelsomino, seeks damages for loss of consortium. The defendants are American President Lines, Inc. ("APL"), Woodley Maritime Corp., ("Woodley"), Costmare Shipping Company, S.A., ("Costmare"), and Aktieselkabet Dampskibsselskabet (hereinafter "Maersk"). Plaintiffs allege violations of the General Maritime Law and the New York State common law of negligence. Defendants have filed third-party complaints against Howland Hook, plaintiffs' employer. APL, Woodley, and Costamare (the "Vessel Defendants") and Maersk have filed separate motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. All defendants assert common law defenses, and the Vessel Defendants raise the additional "defense" of Section 905(b) of the Longshore-

men and Harbor Worker's Compensation Act (the "LHWCA"), 33 U.S.C. § 905(b).

### Background

On February 8, 2001, plaintiffs Giovanni Patalano and Leonardo D'Alessandro, were longshoremen in the employ of third-party defendant, Howland Hook, the owner and operator of the Howland Hook Container Terminal in Staten Island. Maersk is the owner of a container which, as will be seen, caused injury to both plaintiff longshoremen. APL is the time charterer of the vessel known as the APL Panama, the ship that brought the container from Rotterdam to Howland Hook. As time charterer of the APL Panama, APL had effective control over the crew of the vessel. APL also acts as Woodley's representative at Howland Hook. Woodley is the registered owner of the APL Panama, and Costamare is the manager of the vessel. The defendants are all connected via contractual relationships. For purposes of the present motion it is sufficient to note that Maersk had a contractual right to use a berth at Howland Hook; that APL and Maersk have a berth sharing agreement; and that Maersk contracted with APL to transport the subject container from Europe to the United States.

The subject container was loaded with beer and placed on the APL Panama in Rotterdam. During the voyage from Rotterdam to New York, the APL Panama encountered severe weather. It has been conceded for the purpose of the motions that the damage to the containers occurred at this time. The captain of the APL Panama notified John Gibson, the APL Terminal Superintendent at Howland Hook, of the damaged containers via telex, providing the identification numbers of the containers and how each was damaged, including that the hinges on the door of the subject container, number 7091355, were broken. This telex stated: Be ad-vised that due to very heavy weather encountered during the transocean voyage [following] containers found to have sustained damage (externally):

1. MAEU 6112509 (181182) fore outer twist lock socket broken, crew set additional lashing;

2. MAEU 7091355 (180382)—MOLU 8128040 (180182)—MOLU 8119650 (180482) ICSU 1734367 (300382)—CLHU 4013137 (380382) door hinges broken; 3. AMPU 3701698 (010112)—Flat rack with two wooden boxes one box is slightly opened crew set an additional belt to prevent further exposure of the contents.

No warning of any kind, whether direct or indirect (for example, by marking the container itself), were given by defendants to the longshoremen. Gibson relayed the information to Dick Lange of Howland Hook's Marine Department, who in turn notified its head of safety, Thomas Bolcar. When the APL Panama arrived in Staten Island, on January 30, 2001, an unidentified Howland Hook superintendent inspected the container and determined that it could be moved off of the ship, which it was. On February 6, 2001, Bolcar and Prad Patel, a surveyor employed by Maersk, inspected the container in the yard. Patel noted that the doors were damaged and specifically that the door hinges were separated. Shortly thereafter, an unnamed truck driver refused to transport the container to its ultimate destination because of the damaged hinges. Howland Hook employees then contacted Bill Joyce, then the Maersk representative at Howland Hook, and informed him that the container would not be moved. Joyce, in turn, contacted Tom Fallon, the head of Howland Hook's container maintenance and repair department, and the two of them inspected the container. Joyce then asked that the container be repaired. Fal-

lon, deciding that repairing the container while it was full of cargo could result in a fire, ordered that the container be emptied.

At this point, prior to the container being moved to the container repair station, Howland Hook directed plaintiff D'Alessandro and three other longshoremen to unload the container. Under normal circumstances, prior to unloading a damaged container, certain safety precautions would be taken; here, however, none were. As a result, when the container doors were opened, they fell and injured D'Alessandro and Patalano, who was working on an adjacent container.

### Standard

Motions for summary judgment are granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. *Id.* A material fact is one whose resolution would "affect the outcome of the suit under governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986). Nor may the non-moving party "simply show that there is some metaphy-

sical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. The party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Discussion

Plaintiffs claim that all defendants were negligent and that their negligence caused plaintiffs' injuries. Maersk argues that, under either the General Maritime Law or New York State common law, plaintiffs cannot recover for their injuries because they were hired to repair the condition that resulted in their injuries. The Vessel Defendants join Maersk in its repair defense, and they raise the additional defense that, under the LHWCA, they had no duty to plaintiffs, and, even if they did, their warning to Howland Hook absolves them of any liability.

### General Maritime Law and New York Common Law

■ As acknowledged by Maersk, it owed plaintiffs the ordinary negligence duty of reasonable care under the circumstances. Maersk, relying on cases such as *West v. United States*, 361 U.S. 118, 123, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959), which held there was no duty to protect plaintiff from risks inherent in carrying out the contract, argues that, because the opening and unloading of the container was a necessary precondition to its repair, plaintiffs were engaged in repairing the container, and they cannot now recover for injuries arising out of these activities.

However, Howland Hook was hired to perform multiple tasks, and there is an issue of fact as to whether, at the time of the accident, plaintiffs were employed in the repair task, or even as to whether Howland Hook had commenced repairs by unloading the contents.[1] Defendants do not

---

1. Defendants cite *Kowalsky v. Conreco Com-*      *pany*, 264 N.Y. 125, 190 N.E. 206 (1934), as

dispute that they provided no direct notice to the plaintiffs of the condition of the container. Joseph Carrubba, Howland Hook's container freight manager, testified that plaintiffs were not part of the repair team. Plaintiffs testified that they had never taken part in repairing containers and that they would not have approached the containers if they were aware of the damage. As there are questions of fact as to whether the repair defense is applicable, defendants' motion for summary judgment on this ground is denied.

█ The Vessel Defendants further argue that, under the Restatement (Second) of Torts, Section 343(A), the container posed an open and obvious danger and accordingly they cannot be liable for the injuries caused by it. However, it is a question of fact as to whether or not the condition of the container was open and obvious. That several individuals who inspected the container saw the damage, presumably because they were looking for it, is not dispositive. Both plaintiffs testified to the effect that they would not have approached the container if they knew it was damaged. Moreover, defendants' testimony as to obviousness is belied by their own decision to forego repairs until after the truck driver refused to transport the container. If the risk was obvious, then presumably defendants recognized that the container needed to be repaired prior to the truck driver's objections. If defendants' behavior in attempting delivery of the container without repairing it first was

reasonable, either the damage and potential danger stemming from the damage was not open and obvious, or the defendants themselves were ignoring the condition. However, even if, as a matter of law, the court found the damaged container to be an open and obvious danger, defendants could still be found liable. The Restatement provides that:

> A possessor of land is not liable to his invitees for physical harm to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate that harm despite such knowledge or obviousness.

Restatement (Second) of Torts § 343A(1). Moreover, the Restatement specifically provides that a defendant should anticipate harm arising from an open and obvious danger where a defendant has reason to believe a person:

> [M]ight be distracted, so that he will not discover what is obvious, [or where the defendant] has reason to expect that the [plaintiff] will proceed to encounter the known and obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.

Restatement (Second) of Torts § 343A(1). The plaintiffs were longshoremen engaged in the business of unloading containers, the group most likely to encounter the container, and their injuries were the result of the most predictable of acts, opening the container. In a busy workplace full of virtual-

---

supporting the proposition that there is no duty on a property owner to protect a plaintiff who is injured even where plaintiff was not engaged to repair the defect that caused the injury. In *Kowalsky* the plaintiff was repairing a broken window pane when the bars protecting the window, *which plaintiff's employer was in the process of repairing,* collapsed. Accordingly, *Kowalsky* does not, as argued by defendants, expand the protections

of the "injured in the course of repair" defense; rather, it simply recognizes it. Moreover, unlike the hypothetical posed by the court in *Kowalsky* ("man engaged in tearing down a house is constantly exposed to dangers of his own creation"), here the dangers were not created by plaintiffs or their employer; rather they were created by the defendants.

ly identical containers, it is quite predictable that a worker might mistakenly open the damaged container, and it is reasonable that, to a plaintiff-longshoreman, the advantage of opening the container, continued employment, might outweigh the apparent risk. As set forth in the Restatement, in cases such as this, that a danger is known or is obvious, is "not conclusive in determining the duty of the defendant, or whether he has acted reasonably under the circumstances." Restatement (Second) of Torts § 343A(1). The issue is one of fact.[2]

## LHWCA

Vessel Defendants, in addition to raising the defenses already rejected, argue that, under Section 905(b) of the LHWCA, as interpreted by the Second Circuit in *Cox v. Flota Mercante Grancolombiana*, 577 F.2d 798, (2d Cir.1978), they have no liability. This reliance on *Cox*, in light of the Supreme Court's later decision in *Scindia Steam Navigation Co. Ltd. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), is misplaced. *Scindia* did not eliminate a defendant's liability for its *own* negligence. In fact, it found a factual issue as to negligence which precluded summary judgment.

In interpreting the 1972 Amendments to the LHWCA, which included Section 905(b), the Court in *Scindia* specifically state that:

The compensation payments due the longshoreman from the stevedore for injuries incurred in the course of his employment were substantially increased; the longshoreman's right to recover for unseaworthiness was abolished; *his right to recover from the shipowner for*

*negligence was preserved in § 905(b)*, which provided a statutory negligence action against the ship.... Section 905(b) did not specify the acts or omissions of the vessel that would constitute negligence. In light of the differences among the lower federal courts as to the construction and application of § 905(b), neither can it be said that the legislative history, which has been analyzed and reanalyzed in the course of these cases, furnishes sure guidance for construing § 905(b). Much was left to be resolved through the application of accepted principles of tort law and the ordinary process of litigation. (emphasis added)

*Scindia* at 165–166, 101 S.Ct. 1614. Quoting the Congressional Committee Reports on Section 905(b), the Supreme Court noted that the stated purpose of eliminating vessel operator liability for unseaworthiness, or non-delegable duties, was to place an injured longshoreman in the same position he would be in if he were injured in non-maritime employment on land. The vessel operator was to have liability:

[B]ased on its own negligence [which] could be proved only if it was shown to have acted or have failed to act in a negligent manner such as would render a land-based third party in nonmaritime pursuits liable under similar circumstances.... Nothing was intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition as long as the vessel was not chargeable with the negligence of the stevedore or employees of the stevedore .... the definition

**2.** I note that in *Scindia Steam Navigation Co. Ltd. v. De Los Santos*, 451 U.S. 156, 168 n. 14., 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), the Supreme Court stated that Sections 343 and 343(A) of the Restatement (Second) of Torts are "not irrelevant," but "do not furnish sure

guidance" in LHWCA cases. Since resort to these Sections by defendants has been to no avail on these motions, there is no need to address the extent of their applicability to this case.

of the vessel's negligence and its resulting liability were left to be resolved through the application of accepted principles of tort law and the ordinary process of litigation—just as they are in cases involving alleged negligence by land-based third parties.

*Id.* at 166, 101 S.Ct. 1614.

■ Therefore, the question is not, as argued by Vessel Defendants, whether or not they provided a warning to Howland Hook; rather, it is whether they acted or failed to act in a negligent manner vis-a-vis the longshoremen. Vessel Defendants' reliance on *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 114 S.Ct. 2057, 129 L.Ed.2d 78 (1994), is also misplaced. First, in *Howlett* the dangerous condition was not known to the defendant, while here the defendants were fully aware of the problem. Second, while in *Howlett* the court held that a shipowner need not "make reasonable inspections *during* and *after* cargo operations to discover dangerous conditions (emphasis added)," the court did not absolve a vessel owner of responsibility for conditions of which it is aware. Simply put, the Vessel Defendants knew of, and have acknowledged responsibility for, the damage to the container. Rather than take remedial measures to ensure no injuries resulted from the damage, the Vessel Defendants issued a warning to Howland Hook (and nothing at all to the individual plaintiffs), the adequacy of which is a question of fact.

This court finds (then) Judge Cardozo's opinion in *Hooey v. Airport Construction Co.*, 253 N.Y. 486, 171 N.E. 752 (1930), to be instructive. In *Hooey* the plaintiff was a laborer engaged by the defendant general contractor in the construction of an airport in Albany, New York. As part of that construction, defendant had subcontracted with a group of masons to construct brick walls that would form part of an airplane hangar. Following the partial completion of one of those walls, the masons moved to another part of the site to allow plaintiff to make certain installations which could be done more efficiently prior to the wall being completed. The wall was not fitted with the customary wood bracing, and, almost immediately following plaintiff's commencement of labor on the wall, it collapsed. Plaintiff sued, claiming that the failure to properly brace the wall amounted to negligence on the part of the masons and the defendant. The contractor argued that, as it was the masons' responsibility to ensure proper bracing, he could not be held liable for plaintiff's injuries. The court rejected this argument finding that there was no contractual provision or custom and practice that dictated that the masons would provide the bracing, and *even if there were*, the contractor had a duty to cure those unsafe conditions at the work site, of which it was aware. Here, defendants are claiming that a third-party, Howland Hook, was responsible to ensure the safety of those working around the container. Even if this is so, like the contractor in *Hooey*, defendants had a continuing duty to ensure the container, damaged while in their custody, and foreseeably dangerous to persons working on it, did not cause injury.

For the reasons stated above, defendants' motions for summary judgment are denied. The parties are directed to Magistrate Judge Go to supervise settlement discussions and, if necessary, the preparation of a joint pretrial order. If the parties believe that mediation would be useful, they may request a mediation order from Judge Go or the undersigned.

**SO ORDERED.**